UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                         :

IN RE WARNER CHILCOTT LIMITED
SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

06 Civ. 11515 (WHP)

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

        On November 19, 2008, this Court preliminarily approved a settlement of all claims in this securities class action. Lead Plaintiffs International Brotherhood of Electrical Workers Local 98 and Wesley Ruggles Ltd. II, represented by co-lead counsel Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Abraham Fruchter & Twersky LLP ("Abraham Fruchter") (together "Class Counsel"), move for final approval of the settlement and plan of allocation and an award of attorney's fees and expenses. For the following reasons, the motion for final approval of the settlement and the plan of allocation is granted, and the motion for attorney's fees and reimbursement of expenses is granted in part and denied in part.

## BACKGROUND

        Lead Plaintiffs alleged that in connection with the company's initial public offering ("IPO"), Defendants Warner Chilcott Ltd. ("Warner Chilcott") and certain of its officers (collectively "Defendants") made false and misleading statements regarding the company's Ovcon 35 and Ovcon Chewable products. The parties commenced discovery on June 18, 2007. Defendants produced 1.1 million pages of documents and three non-party witnesses produced 2,000 pages of documents. Lead Plaintiffs interviewed Warner Chilcott's three top executives, including two Defendants. In connection with Lead Plaintiff's motion for class certification, Defendants took three depositions. Defendants did not oppose class certification, but indicated

their desire to depose class members who attended roadshows where Defendants claim certain disclosures were made. On February 4, 2008, this Court certified a class of all persons who purchased shares pursuant to or traceable to the IPO between September 20 and 26, 2006.

After participating in a mediation on March 17 and 18, 2008, the parties reached a settlement. The settlement provides for a payment of $16.5 million in exchange for a release of all claims against the Defendants. Notice was mailed to over 21,000 potential class members. No class member filed an objection. As of the deadline for filing a claim, holders of approximately 20 million of the 70 million shares in the IPO filed claims. (Transcript dated Apr. 30, 2009 ("Tr.") at 6.) Those 20 million shares represent approximately $51 million in losses. (Tr. at 18.)

## DISCUSSION

### I. Final Approval

A district court must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable. See D'Amato v. Deutsche Bank, 235 F.3d 78, 85 (2d Cir. 2001). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Class Counsel have extensive experience with class actions, and this Court has no doubt that the settlement was the result of arm's length negotiations. Accordingly, the Court finds that the negotiating process was fair, adequate, and reasonable.

In City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), the Second

Circuit identified nine factors for the Court to consider in determining whether a settlement is

substantively fair, adequate and reasonable:

> (1) the complexity, expense and likely duration of the litigation, (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed, (4) the risks
> of establishing liability, (5) the risks of establishing damages, (6)
> the risks of maintaining the class action through the trial, (7) the
> ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery, (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

This Court has previously analyzed the proposed settlement in light of these

factors and preliminarily determined that the settlement is fair, adequate, and reasonable. See In

re Warner Chilcott Ltd. Sec. Litig., 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov.

20, 2008). Since that decision, no class member has filed an objection to the settlement. Thus,

the second Grinnell factor—the reaction of the class to the proposed settlement—weighs in favor

of approval. See In re PaineWebber P'shps. Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (noting

that the absence of objections may itself be taken as evidence of the fairness of a settlement).

Accordingly, the Court has no reason to reconsider its findings at the preliminary approval stage.

Lead Plaintiffs' motion for final approval of the settlement is granted.


II. Plan of Allocation

"To warrant approval, the plan of allocation must meet the standards by which the

. . . settlement was scrutinized — namely, it must be fair and adequate." Maley v. Del Global

Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). An allocation formula need only have

a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. Maley, 186 F. Supp. 2d at 367.

The plan of allocation proposed by the parties has been crafted by competent counsel. It provides for a pro rata allocation of settlement proceeds based on the proportional losses suffered by each individual class member. The plan of allocation also takes into account when individual class members purchased and sold their common stock. The Court has received no objection to the plan of allocation, it was negotiated at arm's length, and its features are consistent with other plans that have been approved in this district. See, e.g., In re Veeco Instruments Sec. Litig., No. 05 MDL 01695 (CM), 2007 WL 4115809, at *13-14 (S.D.N.Y. Nov. 7, 2007);   In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 463 (S.D.N.Y. 2004); In re AOL Time Warner, Inc. Sec. & ERISA Litig., MDL No. 1500 (SWK), 2006 WL 903236, at *17-18 (S.D.N.Y. Apr. 6, 2006). Accordingly, the Court grants the motion for approval of the plan of allocation.

## III. Attorney's Fees and Expenses

In calculating a reasonable attorney's fee, this Court has discretion to choose between the lodestar method and the percentage of recovery method. In re WorldCom, Inc. ERISA Litig., No. 02 Civ. 4816 (DLC), 2005 WL 3101769, at *7 (S.D.N.Y. Nov. 21, 2005). However, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." WorldCom, 2005 WL 3101769, at *7 (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)). Even where the percentage method is used, the lodestar method remains useful as a "cross-check on the

reasonableness of the requested percentage." Goldberger v. Integrated Res., Inc., 209 F.3d 43,

47, 50 (2d Cir. 2000).  Under either method, the Court is guided by the following criteria: (1) the

time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the

risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the

settlement; and (6) public policy considerations.  See Goldberger, 209 F.3d at 50.

      Under the percentage of recovery method, the Court considers the Goldberger

factors and sets a percentage of the settlement as a fee.  Goldberger, 209 F.3d at 47; Savoie v.

Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999).  In Goldberger, the Second Circuit rejected a

25% recovery as a benchmark and instructed that a "fee award should be assessed based on

scrutiny of the unique circumstances of each case."  Goldberger, 209 F.3d at 51-53.

Consequently, the percentage recoveries approved in this district fall within a wide range.  See,

e.g., Goldberger, 209 F.3d 43 (affirming the district court's award of 4% of a $54 million

settlement); In re Elan Sec. Litig., 385 F. Supp. 2d 363 (S.D.N.Y. 2005) (awarding 12% of a $75

million settlement); In re Veeco Instruments Inc. Sec. Litig., No. 05 MDL 1695(CM), 2007 WL

4115808 (S.D.N.Y. Nov. 7, 2007) (awarding 30% of a $5.5 million fund).

      Under the lodestar method, the Court scrutinizes the fee petition to ascertain the

number of hours reasonably billed to the plaintiff and multiplies that figure by an appropriate

hourly rate and a multiplier.  Goldberger, 209 F.3d at 47; Savoie, 166 F.3d at 460.  As with the

percentage of recovery, courts in this district have applied a wide range of multipliers.  See, e.g.,

Goldberger, 209 F.3d 43 (affirming the district court's decision to apply no multiplier); In re

NTL Sec. Litig., No. 02 Civ. 3013 (LAK), 2007 WL 1294377 (S.D.N.Y. May 2, 2007)

(awarding a 15% recovery of a $9 million settlement, which resulted in a .42 multiplier); Maley,

186 F. Supp. 2d at 371 (finding a 4.65 multiplier "fair and reasonable").

Class Counsel seek a fee award of 27.5% of the settlement, or $4,537,500. This fee represents a 1.51 multiplier for a lodestar of $3,009,413.25. Class Counsel and other counsel spent, in the aggregate, 7,432.10 hours on this litigation as follows: (1) 3,900 hours resulting in a lodestar of $1,466,683.75 for Coughlin Stoia (Declaration of Ellen Gusikoff Stewart dated Apr. 9, 2009 ("Stewart Decl.") ¶ 4); (2) 2,590.25 hours resulting in a lodestar of $1,132,123.75 for Abraham Fruchter (Declaration of Lawrence D. Levit dated Apr. 7, 2009 ¶ 4); (3) 171 hours for a lodestar of $80,507.00 for Zwerling, Schachter & Zwerling, co-counsel for Plaintiff Marc Weinberg ("Weinberg") (Declaration of Richard A. Speirs dated Mar. 27, 2009 ¶ 4); (4) 54.5 hours for a lodestar of $29,957.50 for Klafter Olsen & Lessler, co-counsel for Weinberg (Declaration of Jeffrey Klafter dated Mar. 24, 2009 ¶ 4); and (5) 715.75 hours for a lodestar of $300,141.25 for the Law Offices of Bernard M. Gross, counsel for Plaintiff Angelo Albano (Declaration of Bernard M. Gross dated Mar. 20, 2009 ¶ 4). Coughlin Stoia used project attorneys to perform a significant portion of the document review at a reduced rate. (Stewart Decl. ¶ 4.) The latter three law firms assisted Coughlin Stoia and Abraham Fruchter, primarily in the review of documents produced by Defendants. None of these law firms provided the Court with their underlying time sheets or any generic description of the tasks each attorney performed or the number of hours devoted to each category.

As to the first Goldberger factor, counsels' time and effort was spent: (1) investigating the allegations; (2) drafting and filing the Consolidated Amended Complaint; (3) reviewing over a million pages of documents produced by Defendants; (4) conducting a handful of witness interviews and depositions; (5) filing an unopposed motion for class certification; and (6) participating in a two-day mediation and subsequent settlement negotiations. Counsel will also likely spend some additional hours after final approval of the settlement working with class

6

members through the claims process. Without any underlying time sheets, the Court is left to presume that the majority of the 7,432 hours was spent reviewing the approximately 1.1 million pages produced by Defendants.

   The Court considers the second and third Goldberger factors together because they are related. The second Goldberger factor requires the Court to consider the complexities and magnitude of the litigation. The third Goldberger factor, the risk of the litigation, is "perhaps the foremost factor to be considered in determining whether to award an enhancement." Goldberger, 209 F.2d at 54 (internal citations and quotations omitted). "Because all but a small percentage of securities class actions result in settlements, securities class actions generally pose only a small risk of non-recovery." NTL, 2007 WL 1294377, at *7 (internal quotations omitted). While this is a complex securities case and therefore not without some risk, Defendants did not move to dismiss or oppose class certification. Indeed, it became apparent early on that this litigation would settle. If the parties had not reached a settlement, Defendants would likely have moved for summary judgment and taken discovery of certain class members who attended roadshows, which may have led to partial decertification of the class. In sum, this securities litigation was less risky than most.

   As to the fourth Goldberger factor, the quality of representation, Class Counsel provided extremely high-quality representation, albeit there were more law firms than appropriate for an efficient prosecution.

   The fifth Goldberger factor requires the Court to consider the relationship of the requested fee to the settlement. The requested attorney's fee award will leave Plaintiffs approximately $11 million after reimbursement of expenses. Based on the number of claims that

were filed and the estimated losses for those 20 million shares, class members will at best receive 20% of their losses.

The sixth Goldberger factor requires the Court to weigh public policy considerations. While public policy favors "the award of reasonable attorney's fees in class action securities litigation," courts must also "guard against providing a monetary windfall to class counsel to the detriment of the plaintiff class." NTL, 2007 WL 1294377, at *8 (internal quotations omitted).

The 27.5% request is within the range of percentages awarded in this district. See, e.g., Hicks v. Stanley, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("The 30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit."); Maley, 186 F. Supp. 2d 358 at ("Courts in this Circuit have awarded fees ranging from 15% to 50% of the settlement fund.") A 1.5 multiplier is also within the range of multipliers approved in this district. However, the risk in this litigation significantly depreciated when Defendants failed to move to dismiss and decreased even more when Defendants did not oppose class certification. In addition, while the review of a million pages of discovery is a significant undertaking, 7,400 hours appears excessive. Moreover, the use of multiple law firms to conduct the document review was likely an inefficient process and was never authorized by this Court.

Accordingly, weighing all of these factors, the Court finds an 18% award, $2,970,000, to be reasonable. While this award only represents a .9 multiplier, it encourages more efficient discovery practices and still compensates Class Counsel for its time and effort, for the slight risk it faced in this case, and for the high quality of its representation. Moreover, it allows for approximately $13 million to be distributed to class members.

8

IV.  Reimbursement of Expenses

          Class Counsel also seeks reimbursement of $142,190.94 in litigation expenses. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).  Having reviewed Class Counsel's submissions in support of its application, the Court is satisfied that the expenses incurred were reasonable.  Accordingly, the motion for reimbursement of $142,190.94 in litigation expenses is granted.


CONCLUSION

          For the foregoing reasons, the motion for final approval of the settlement and the plan allocation is granted, and the motion for attorney's fees and reimbursement of expenses is granted in part and denied in part.  The parties are directed to submit a proposed order awarding attorney's fees and expenses consistent with this Memorandum and Order.

Dated:     July 10, 2009
          New York, New York

                              SO ORDERED:

                              WILLIAM H. PAULEY III
                                  U.S.D.J.

_All Counsel of Record_